UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID HILDERBRAND, DAVID KIDERMAN,   :
and RYAN DETZEL,                      :
                                     :          Civil Docket No.:
                    Plaintiffs,      :
                                     :          COMPLAINT
        - against -                  :
                                     :          JURY TRIAL DEMANDED
DOWNING INVESTMENT PARTNERS, LP,     :
DOWNING PARTNERS, LLC, DOWNING       :
HEALTH TECHNOLOGIES, LLC, f/k/a      :
DOWNING DIGITAL HEALTHCARE GROUP,    :
LLC, SURGICAL SAFETY SOLUTIONS       :
INTERACTIVE, LLC, SURGICAL SAFETY    :
SOLUTIONS, LLC, DOWNING MEDICAL      :
DEVICE GROUP, LLC, 3SI SYSTEMS, LLC, :
DAVID W. WAGNER, MICHAEL H. SHAUT,   :
RICHARD BUCKINGHAM, JEFF RICE,       :
MARC M. LAWRENCE, MICHAEL GRUMBINE,: 
BRETT GIFFIN, JAY PILA, GREG AUDA,   :
PAUL GIROUX, MARCO ZENATI,           :
GEORGE ROBBIE, GLENN HAUFLER,        :
and BRAD PULVER,                     :
                                     :
                    Defendants.      :
------------------------------------------------------------x

Plaintiffs David Hilderbrand, David Kiderman and Ryan Detzel (collectively,

"Plaintiffs"), by their attorneys, Carmel, Milazzo & DiChiara LLP, as and for the

Complaint, allege as follows:

## NATURE OF THE ACTION

1.      This action arises out of an outright fraud and a novel Ponzi scheme

perpetrated by Defendants.  Defendants recruited Plaintiffs to be employees, entered into

employment agreements which provided for a salary, commission, bonus, and expense

reimbursement, and as a condition of their employment, required Plaintiffs to make a

minimum investment of $250,000 each in a private placement in either Defendant

1

Downing Health Technologies, LLC or Surgical Safety Solutions, LLC (the "Downing Private Placement"). Plaintiffs, induced by these promises entered into employment agreements with the corporate Defendants and each made the required $250,000 investment.

2.      Upon information and belief, at the time Defendants entered into employment agreements with Plaintiffs, they had already ceased paying their current employees' salaries, and used Plaintiffs' investments in the Downing Private Placement to pay past compensation due to other current employees.

3.      Indeed, almost immediately after beginning their employment with the corporate Defendants, Defendants ceased paying Plaintiffs their contractually required salaries, and failed to reimburse them for their expenses, or provide them with health insurance, in direct violation of the Fair Labor Standards Act ("FLSA"), New York Labor Law, California Labor Law, Ohio Labor Law and their respective employment agreements.

4.      Additionally, Defendants committed fraud in the offer and sale of the Downing Private Placement investments. Specifically, the Downing Private Placement offering materials contain numerous material misrepresentations and omissions concerning Downing's business lines, the progress of Downing's proprietary products, prior rounds of funding and investments, Downing's financial condition, and the vendors with whom Downing was doing business.

5.      The Defendants, by engaging in the conduct described in this Complaint, have violated the antifraud provisions of the federal securities laws, committed common law fraud, and violated the FLSA, New York Labor Law, Ohio Law and California law.

6.      Plaintiffs seek to recover compensatory, consequential and punitive damages as a result of Defendants wrongful conduct and Plaintiffs unpaid wages for work they performed, reimbursement of their expenses, together with reasonable attorneys' fees, costs of this action, pre- and post-judgment interest, and other appropriate relief pursuant to the FLSA, New York Labor Law, California Labor Law, Ohio Labor Law and the federal securities laws.

## PARTIES

7.      Plaintiff David Kiderman is an individual, and a citizen of the State of New York, residing in Manhattan, New York.

8.      Plaintiff David Hilderbrand is an individual, and a citizen of the State of California, residing in El Dorado Hills, California.

9.      Plaintiff Ryan Detzel is an individual, and a citizen of the State of Ohio, residing in Highland Heights, Ohio.

10.      Upon information and belief, Defendant Downing Investment Partners, LP, is a limited partnership organized and existing pursuant to the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022.

11.      Upon information and belief, Defendant Downing Partners, LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022.

12.      Upon information and belief, Defendant Downing Health Technologies, LLC, f/k/a Downing Digital Healthcare Group, LLC, is a limited liability company

organized and existing pursuant to the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022.

13.    Upon information and belief, Defendant Downing Medical Device Group, LLC is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with its principal place of business at 25 Corporate Drive, 3rd Floor, Burlington, Massachusetts 01803.

14.    Upon information and belief, Defendant Surgical Safety Solutions, LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware with its principal place of business at 25 Corporate Drive, 3rd Floor, Burlington, Massachusetts 01803.

15.    Upon information and belief, Defendant Surgical Safety Solutions Interactive LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware with its principal place of business at 25 Corporate Drive, 3rd Floor, Burlington, Massachusetts 01803.

16.    Upon information and belief, Defendant 3si Systems LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware with its principal place of business at 25 Corporate Drive, 3rd Floor, Burlington, Massachusetts 01803.  Upon information and belief, Defendants Surgical Safety Solutions, LLC, Surgical Safety Solutions Interactive, LLC, Downing Medical Device Group, LLC, and Downing Health Technologies, LLC have been consolidated into 3si Systems, LLC, and, as such, 3si Systems, LLC is the successor in interest to the aforementioned entities.

17.     Upon information and belief, Defendant David W. Wagner ("Wagner") is an individual and citizen of the State of Rhode Island.  Wagner is the Chairman and Managing Partner of Defendant Downing Partners, LLC, and the Chief Executive Officer of Defendants Downing Investment Partners, LP, Downing Health Technologies, LLC, Surgical Safety Solutions, LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

18.     Upon information and belief, Defendant Michael H. Shaut ("Shaut") is an individual and citizen of the State of Ohio.  Shaut is the President and Senior Managing Director of Defendants Downing Investment Partners, LP, Downing Partners, LLC, Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

19.     Upon information and belief, Defendant Richard Buckingham ("Buckingham") is an individual and citizen of the State of New Hampshire. Buckingham is the Co-Founder and Vice-Chairman of Defendants Downing Partners, LLC, Downing Investment Partners, LP, Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

20.     Upon information and belief, Defendant Jeff Rice ("Rice") is an individual and citizen of the State of Massachusetts.  Rice is the Chief Administrative Officer of Defendants Downing Partners, LLC, Downing Health Technologies, LLC, Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

21.     Upon information and belief, Defendant Marc M. Lawrence ("Lawrence") is an individual and citizen of the State of Florida.  Lawrence is the President and Chief

Operating Officer of Defendants Downing Partners, LLC, Downing Health Technologies
LLC and 3si Systems LLC.

      22.    Upon information and belief, Defendant Brett Giffin ("Giffin") is an
individual and citizen of the State of New York.  Giffin is the President and Chief
Executive Officer of Defendants Surgical Safety Solutions LLC, Surgical Safety
Solutions Interactive LLC and 3si Systems LLC, and President and General Manager of
Defendant Downing Partners, LLC.

      23.    Upon information and belief, Defendant Jay Pila ("Pila") is an individual
and citizen of the State of New York.  Pila is the former President and General Manager
of Defendants Surgical Safety Solutions, LLC and Surgical Safety Solutions Interactive,
LLC.

      24.    Upon information and belief, Defendant Paul Giroux ("Giroux") is an
individual and citizen of the State of Massachusetts.  Giroux is the former Chief
Marketing Officer of Defendant Downing Partners LLC.

      25.    Upon information and belief, Defendant Marco Zenati ("Zenati") is an
individual and citizen of the State of Massachusetts.  Zenati is a Co-Founder of
Defendants Downing Partners LLC, Downing Investment Partners, LP, Surgical Safety
Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

      26.    Upon information and belief, Defendant Brad Pulver ("Pulver") is an
individual and citizen of the State of Ohio.  Pulver is the former President and General
Manager of Defendants Downing Medical Device Group, LLC and Downing Health
Technologies LLC.

27.     Upon information and belief, Defendant George Robbie ("Robbie") is an individual and citizen of the State of Georgia.  Robbie is the President and General Manager of Defendants Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

28.     Upon information and belief, Defendant Greg Auda ("Auda") is an individual and citizen of the State of Pennsylvania.  Auda is the Chief Commercial Officer of Defendants Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

29.     Upon information and belief, Defendant Glenn Haufler ("Haufler") is an individual and citizen of the State of Massachusetts.  Haufler is the President and General Manager of Defendants Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

30.     Upon information and belief, Defendant Michael Grumbine ("Grumbine") is an individual and citizen of the State of New Mexico.  Grumbine is the Chief Technology Officer of Defendants Surgical Safety Solutions LLC, Surgical Safety Solutions Interactive LLC and 3si Systems LLC.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over Plaintiffs federal claims pursuant to 28 U.S.C. § 1331, as certain of Plaintiffs' claims arise under federal statutes, specifically the FLSA and Securities Exchange Act of 1934.

32.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C.S. § 1367 as they arise out of the same transactions and

occurrences as the federal claims, and all are so related that they form part of the same case and controversy.

33.     Venue is proper in this district pursuant to the 29 U.S.C. § 216, and 28 U.S.C. § 1391(b)(2), and Section 27 of the Securities Exchange Act of 1934, as a substantial part of the events giving rise to this action occurred in the State of New York, County of New York.

34.     This Court has personal jurisdiction over Defendants.  The Court has personal jurisdiction over Defendants located in New York pursuant to CPLR § 301 because they are New York citizens and/or that maintain their principal places of business in the State of New York, County of New York.

35.     The Court has personal jurisdiction over the non-New York Defendants pursuant to CPLR § 302(a)(1), (2) and (3).  Defendants' transacted business in New York from which this action arises.  Further, Defendants committed torts in New York, and committed torts outside of New York causing injury in New York.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiffs' Recruitment and Defendants' Representations

36.     Beginning in late 2014, through early 2015, Defendants Wagner, Shaut, Pila, Pulver and Lawrence began actively recruiting Plaintiffs to invest in the Downing Private Placement, and become employees of Defendants Downing Health Technologies, LLC, f/k/a Downing Digital Healthcare Group, LLC, Downing Medical Device Group, LLC, Surgical Safety Solutions, LLC, Surgical Safety Solutions Interactive LLC, now known as 3si Systems LLC, all subsidiaries of Downing Partners, LLC and Downing Investment Partners, LP (collectively, these entities are referred to herein as "Downing").

37.     Defendants Wagner, Shaut, Buckingham, Pila, Rice, Pulver and/or Lawrence pitched Downing as an opportunity to work for a venture capital firm, and Plaintiffs would have the opportunity to sell several different products which were already commercialized, generating revenue, and that Plaintiffs' potential commissions from the sale of these products would be uncapped.

38.     Defendants Wagner, Shaut, Buckingham, Pila, Rice, Pulver and/or Lawrence represented to Plaintiffs that, as a condition of their employment, they were required to invest $250,000 each into the Downing Private Placement.

39.     Defendants Wagner, Shaut, Buckingham, Pila, Rice, Pulver and/or Lawrence further represented to Plaintiffs that Downing had already raised $25 million from outside investors, excluding the funds raised from recruited employees investing in the Downing Private Placement.  This representation was false, and known to be false when made.

40.     In connection with Plaintiffs' employment, and their investment in the Downing Private Placement, Defendants Wagner, Shaut, Buckingham, Pila, Rice, Pulver and/or Lawrence represented both orally and in the Downing Private Placement offering materials, *inter alia*, the following:

- That Downing had certain distribution agreements in place, including, but not limited to, those with Intelesens, Vectracorp and FlexLife;

- That Downing's portfolio company Innovative Medical Equipment had $4 million in revenue;

- That Downing portfolio company Defendant Surgical Safety Solutions, LLC had five (5) beta sites up and running, and they were being used in a clinical setting;

- That Downing portfolio company Defendant Surgical Safety Solutions, LLC had $5 million in revenue in the pipeline;

- That Downing portfolio company Defendant Surgical Safety Solutions, LLC was in the process of negotiating 38 contracts;

- That Downing portfolio company SmartCool had a working prototype of its temperature management system;

- That Downing had raised $25 million in capital from investors, excluding recruited employees that invested as part of their employment;

- That Downing had millions of dollars of cash on hand in order fund the business;

- That Medrobotics Corporation was a portfolio company of Downing;

- Defendant Pulver had had personally invested $250,000 in the Downing Private Placement; and

- Downing had secured a $4 million investment from a Colorado investor which could be used at any time to infuse Downing with capital, as necessary.

After commencing their employment at Downing, and investing $250,000 each in the Downing Private Placement, Plaintiffs learned that all of the above representations were false.

41.     Based upon, and reliance on the above representations, Plaintiffs left their positions at their employers at the time, where they were each making between $300,000 and $500,000 a year, to join Defendants.

**B. Plaintiffs' Employment Agreements**

42.     On or about January 26, 2015, in reliance on the representations set forth above, Plaintiff Detzel accepted an offer of employment with Downing set forth in a written employment offer which included, *inter alia*, the following terms:

- A base compensation of one hundred fifty thousand dollars ($150,000) per annum;

- The term of Plaintiff Detzel's employment would be for two (2) years;

- Plaintiff Detzel would receive commissions 5% of all sales for all portfolio companies in his region, with no cap on his commission earnings;

- Plaintiff Detzel would receive a "Balanced-Selling" bonus of up to an additional fifty thousand dollars ($50,000) per annum;

- Plaintiff Detzel would receive variable compensation targeted at one hundred thousand dollars ($100,000) per annum;

- Plaintiff Detzel would be paid on a bi-monthly basis, with two payroll periods: (a) 1st through the 15th of each month; and (b) 16th through month-end;

- The cost of Plaintiff Detzel's health benefits would be covered 100% by Downing during the first year of employment;

- Plaintiff Detzel would be reimbursed for expenses, including but not limited to, travel, entertainment, professional organizations, or promotional expenses; and

- Plaintiff Detzel's investment of two hundred fifty thousand dollars ($250,000) into Downing Digital Healthcare Group, LLC n/k/a Downing Health Technologies, LLC, must be completed on or before February 1, 2015, or the employment offer will be rescinded.

43.     In reliance on the representations set forth herein, Plaintiff Detzel invested his retirement savings of $250,000 into Downing Digital Healthcare Group, LLC n/k/a Downing Health Technologies, LLC via a private placement.

44.     On or about March 7, 2015, and in reliance on the representations set forth herein, Plaintiff Kiderman accepted an offer of employment with Downing which included, *inter alia*, the following terms:

- A base compensation of one hundred forty five thousand dollars ($145,000.) per annum;

- The term of Plaintiff Kiderman's employment will be for two (2) years;

- Plaintiff Kiderman would receive commissions at 5% of all sales for all portfolio companies in his region, with no cap on his commission earnings;

- Plaintiff Kiderman would receive variable compensation targeted at one hundred thousand dollars ($100,000) per annum;

- Plaintiff Kiderman would receive a "Balanced-Selling" bonus of up to an additional fifty thousand dollars ($50,000) per annum;

- Plaintiff Kiderman would paid on a bi-monthly basis, with two payroll periods: (a) 1st through the 15th of each month; and (b) 16th through month-end;

- That the cost of Mr. Kiderman's health benefits would be covered 100% by Downing during the first year of employment;

- Plaintiff Kiderman would be reimbursed for expenses, including but not limited to, travel, entertainment, professional organizations, or promotional expenses; and

- Mr. Kiderman's investment of two hundred fifty thousand dollars ($250,000) into Downing Health Technologies, LLC, must be completed on or before March 23 2015, or the employment offer would be rescinded.

45.     In reliance on the representations set forth herein, Plaintiff Kiderman invested his retirement savings of $250,000 into Downing Health Technologies, LLC via a private placement.

46.     On or about May 25, 2015, and in reliance on the representations set forth herein, Plaintiff Hilderbrand accepted an offer of employment with Downing which included, *inter alia*, the following terms:

- Plaintiff Hilderbrand would receive a base compensation of one hundred eighty five thousand dollars ($185,000.) per annum;

- The term of Plaintiff Hilderbrand's employment would be for two (2) years;

- Plaintiff Hilderbrand would receive an annual performance bonus of twenty five percent (25%);

- Plaintiff Hilderbrand would receive a stretch bonus of twenty thousand dollars ($20,000) for exceeding the annual sales plan by ten percent (10%) or more;

- Plaintiff Hilderbrand would be paid on a bi-monthly basis, with two payroll periods: (a) 1st through the 15th of each month; and (b) 16th through month-end;

- That the cost of Plaintiff Hilderbrand's health benefits would be covered 100% by Downing during the first year of employment;

- That Plaintiff Hilderbrand would be reimbursed for expenses, including but not limited to, travel, entertainment, professional organizations, or promotional expenses; and

- That Plaintiff Hilderbrand's investment of two hundred fifty thousand dollars ($250,000) into Downing Health Technologies, LLC.  If the investment was not made by June 5, 2015, then Downing could terminate the employment agreement with Mr. Hilderbrand immediately.

47.    In reliance on the representations set forth herein, Plaintiff Hilderbrand invested his retirement savings of $250,000 into Surgical Safety Solutions, LLC, a division of Downing Health Technologies, LLC via a private placement.

48.    As set forth more fully below, Plaintiffs investments in the Downing Private Placements were mandatory because, upon and information belief, Defendants were engaging in a Ponzi scheme, whereby they used Plaintiffs' investments to pay past compensation and wages due to Downing's employees.

**C. Plaintiffs Commence Their Employment At Downing**

49.     After Plaintiffs became employed at Downing, they learned that there were no viable products to sell, and thus, no way to earn the commissions or bonuses set forth in their respective employment agreements.

50.     Further, almost immediately after Plaintiffs commenced their employment with Downing, Downing failed to meet payroll, and failed to pay Plaintiffs their contractually agreed to salaries, and other sums due under their respective employment agreements.

51.     Plaintiffs would later learn that they were not alone.  Indeed, the then current Downing employees had not been paid their salaries or expenses for a significant period of time prior to Plaintiffs joining Downing.

52.     Even more egregious, then current Downing employees were told by Defendants not to mention this fact to new recruits, including Plaintiffs, and to conceal the fact that they were not receiving their salaries/compensation.

53.     Specifically, on or about June 16, 2015, approximately two weeks after Plaintiff Hilderbrand joined Downing, and after a sales meeting in Nashville, Tennessee, Plaintiff Hilderbrand was at dinner with Defendants Grumbine and Lawrence.  During this dinner, Defendant Grumbine advised Plaintiff Hilderbrand that several employees had not been paid and/or were in arrears.  Plaintiff Hilderbrand, shocked by this statement, turned to Defendant Lawrence and asked him if it was true that Downing's employees had not been paid and asked why Defendant Lawrence did not disclose this to him during his recruitment and before his investment.  Defendant Lawrence responded by stating "You did not ask and be quiet because other people are around."

54.     On or about September 29, 2015, Plaintiffs discovered that Downing had failed to pay for Plaintiffs' health insurance, and that Plaintiffs had not been insured since July 31, 2015.

55.     Despite the fact that Plaintiffs were entitled to be reimbursed for expenses, including health insurance, and regularly submitted expense reports to Downing, Downing failed to pay expenses incurred by Plaintiffs from March 2015 to March 2016.

56.     On or October 26, 2015, Plaintiff Detzel met with Defendant Shaut at a local Starbucks regarding his failure to receive salary and reimbursement of expenses. Incredibly, after Plaintiff Detzel complained about not receiving his salary/expenses, Defendant Shaut stated "if [Detzel] would have asked him if people were being paid at the time [he entered into the employment agreement with Downing], he would have said no."

57.     Further, when Plaintiffs would complain about not receiving their salaries, expenses, or having a viable product to sell so that they could supposedly earn commissions, Defendants Wagner, Shaut, Buckingham, Rice, Lawrence, Grumbine, Giffin, Giroux, Zenati, Robbie, Auda, Haulfer and Pulver would consistently assure them of the increased value of their Downing Private Placement investment, and that they would be paid their back-wages soon.

58.     By way of example, on December 27, 2015, Defendant Wagner sent a memorandum to Downing employees, including Plaintiffs. In this memorandum, Defendant Wagner states, *inter alia*, that "any individual that made an original investment of $250,000 in either Downing Health Technologies or Surgical Safety

Solutions...would yield a return of approximately $1.9 million to the individual investor."

59.     Upon information and belief, this representation, and others made by Defendants Wagner, Shaut, Buckingham, Rice, Lawrence, Grumbine, Giffin, Pila, Giroux, Zenati, Robbie, Auda, Haulfer and Pulver were made with intent of inducing Plaintiffs to continue working, to assuage concerns of Downing's employees concerning their failure to receive salaries, and to conceal the fact that Defendants were engaged in a salary/investment, Ponzi scheme.

60.     Upon information and belief, Defendants knew that by making it mandatory for employees to invest in the Downing Private Placement, it would act as an anchor to keep Plaintiffs employed at Downing, despite not receiving their salaries or expenses, or being able to earn commissions.

61.     Upon information and belief, while Downing was unlawfully and wrongfully failing to pay Plaintiffs, and other Downing employees' salaries and expenses, Defendant Wagner was receiving $60,000 per month in "consulting" fees from Downing.

62.     Upon information and belief, other officer and directors, including the individual Defendants, were receiving compensation from Downing, while Downing's employees were not paid a salary or reimbursed for their expenses.

63.     Between February and March 2016, Plaintiffs resigned from their employment with Downing.

64.     Upon their resignation, the following salary and expenses were due and owing to Plaintiffs:

- Plaintiff Hilderbrand – approximately $164,359.55;

- Plaintiff Detzel - approximately $120,815.00; and

- Plaintiff Kiderman - approximately $102,350.10.

## D. The Ponzi Scheme

65.     Unlike a traditional Ponzi scheme whereby a new investment is used to pay off an older investment, upon information and belief, Defendants used the money invested by new employees, which was mandatory as part of their employment, to pay back-wages due to select Downing employees.

66.     Upon information and belief, when Plaintiffs invested in the Downing Private Placement, their investment of $750,000 was used to re-ignite Downing's payroll and pay its employees, who were not receiving their wages for some time.

67.     Indeed when Plaintiffs complained about not receiving their salaries/expenses, Defendants told them to go find more investors to invest in the Downing Private Placement.

68.     At all relevant times, Defendants Wagner, Shaut, Buckingham, Rice, Lawrence, Grumbine, Giffin, Pila, Giroux, Zenati, Robbie, Auda, Haulfer and Pulver were officers, directors and/or owners of Downing.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Fair Labor Standards Act – Minimum Wage)

69.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 68 of this Complaint as if set forth at length herein.

70.     At all relevant times, Plaintiffs were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

71.    At all relevant times, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda were Plaintiffs' employers within the meaning of 29 U.S.C. § 203(d).

72.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda all possessed the power to hire and fire Plaintiffs, supervised or controlled Plaintiffs' work schedules or conditions of employment, determined the rate or method of payment to Plaintiffs, and/or maintained Plaintiffs' employee records.

73.    At all relevant times, Plaintiffs were engaged in commerce and/or Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. § 206(a).

74.    Defendants willfully failed to pay Plaintiffs' minimum wages, in violation of 29 U.S.C. § 206(a).

75.    Defendants' violations of the FLSA, as described herein, were willful and intentional.

76.    Due to Defendants FLSA violations, Plaintiffs are entitled to recover from Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, unpaid wages, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b), in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Violation of New York Labor Law § 190. et seq. – Plaintiff Kiderman)**

77.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 76 of this Complaint as if set forth at length herein.

78.     At all relevant times, Plaintiff Kiderman was an employee as that term is defined under § 190 of the New York Labor Law ("NYLL").

79.     At all relevant times, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda are all employers as that term is defined under § 190 of the NYLL.

80.     Defendants failed to pay Plaintiff Kiderman his wages at least seven calendar days after the week in which his wages were earned, in violation of § 191 of NYLL.

81.     Defendants failed to pay Plaintiff Kiderman his wages owed to him after he ceased working for Defendants by the next regular pay day, in violation of § 191 of NYLL.

82.     Defendants failed to pay Plaintiff Kiderman his expenses due and owing in violation of § 198-c of NYLL.

83.     As a result of Defendants' NYLL violations, Plaintiff Kiderman is entitled to recover from Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, the full amount of unpaid wages and expenses due and owing, liquidated damages equal to one hundred percent (100%) of the total amount of wages and expenses found to be due, reasonable attorneys' fees, and the costs of this action, pursuant to § 198 of NYLL, in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of Ohio Prompt Pay Act – Plaintiff Detzel)

84.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 83 of this Complaint as if set forth at length herein.

85.     The Ohio Prompt Pay Act ("OPPA") provides in relevant part:

Every individual, firm, partnership, association, or corporation doing business in this state shall, on or before the first day of each month pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month.

O.R.C. § 4113.15(A)

86.     At all relevant times, Plaintiff Detzel was an employee of Defendants within the meaning of the OPPA, and as such, was entitled to timely payment of wages due to him.

87.     At all relevant times, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda are employers within the meaning of the OPPA.

88.     Plaintiff Detzel's salary and expenses are within the meaning of "wage" under the OPPA.

89.     Defendants' failure to pay Plaintiff Detzel his wages due is a direct violation of the OPPA.

90.     As a result of Defendants' OPPA violations, Plaintiff Detzel is entitled to recover from Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, the full amount of unpaid wages owed to him, liquidated damages equal to six percent (6%) of the total amount of wages found due, reasonable attorneys' fees, interest, and the costs of this action, pursuant to Ohio law, in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of California Labor Code §§ 201, 202 and 203 – Plaintiff Hilderbrand)

91.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 90 of this Complaint as if set forth at length herein.

92.     California Labor Code §§ 201, 202 and 203 require Defendants to pay all compensation due and owing to Plaintiff Hilderbrand immediately upon discharge or within seventy two hours of his termination of employment.

93.     At all relevant times, Plaintiff Hilderbrand was an employee of Defendants within the meaning of the California Labor Code.

94.     At all relevant times, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda are employers within the meaning § 558.1 of the California Labor Code.

95.     California Labor Code § 227 provides that unused and vested vacation time shall be paid to employee as wages.  As Plaintiff Hilderbrand did not use his vested vacation time, and Defendants have not paid Plaintiff Hilderbrand his vacation time in wages, Plaintiff Hilderbrand is due additional wages as result of same.

96.     California Labor Code § 203 provides that if an employer willfully fails to pay wages promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.

97.     Defendants willfully failed to pay Plaintiff Hilderbrand his compensation, including vested and unused vacation time, due upon termination as required by California Labor Code §§ 201, 202, 203 and 227.  As a result, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Rice, Pulver, Giffin, Robbie, Haufler, and Auda

are jointly and severally liable to Plaintiff Hilderbrand for wages due and "waiting time" penalties provided under California Labor Code §203, plus interest, reasonable attorneys' fees and costs of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Violation of California Labor Code § 2802 – Plaintiff Hilderbrand)

98.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 97 of this Complaint as if set forth at length herein.

99.     At all relevant times, Plaintiff Hilderbrand was an employee of Defendants within the meaning of the California Labor Code.

100.     At all relevant times, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Rice, Pulver, Giffin, Robbie, Haufler, and Auda are employers within the meaning § 558.1 of the California Labor Code.

101.     California Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

102.     Defendants failed to pay Plaintiff Hilderbrand for his health insurance and reasonable expenses incurred while performing his duties as an employee of Defendants.

103.     Plaintiff Hilderbrand is entitled to reimbursement of these necessary expenditures.

104.     As a result, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Rice, Pulver, Giffin, Robbie, Haufler, and Auda are jointly and severally liable to Plaintiff Hilderbrand for expenses due and owing and "waiting time" penalties under California Labor Code § 2802, plus interest, attorneys' fees and costs of this action.

23

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract)

105.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 104 of this Complaint as if set forth at length herein.

106.    On or about January 26, 2015, Defendant Downing entered into an employment agreement with Plaintiff Detzel, and Plaintiff Detzel invested in the Downing Private Placement.

107.    On or about March 7, 2015, Defendant Downing entered into an employment agreement with Plaintiff Kiderman, and Plaintiff Kiderman invested in the Downing Private Placement.

108.    On or about May 25, 2015, Defendant Downing entered into an employment agreement with Plaintiff Hilderbrand, and Plaintiff Hilderbrand invested in the Downing Private Placement.

109.    Plaintiffs' employment agreement provided for annual salaries, reimbursement of expenses, commissions and mandatory investments into the Downing Private Placement.

110.    Plaintiffs fully performed their obligations under their respective employment agreements and the Downing Private Placement.

111.    To date, Defendant Downing has failed to pay approximately $164,359.55 to Plaintiff Hilderbrand, $120,815.00 to Plaintiff Detzel, and $102,350.10 to Plaintiff Kiderman in wages and expenses due and owing, with exact amounts to be determined at trial.

112.    Further, Plaintiffs' resignations were not voluntary, and were a result of Defendants failure to comply with their obligations under Plaintiffs' respective

employment agreements.  As such, Plaintiffs are entitled to recover the salary owed and the remainder salary due under Plaintiffs' employment agreements.

113.    As a result of same, Defendant Downing is in breach of its employment agreements and Downing Private Placements with Plaintiffs.

114.    Based upon the foregoing, Plaintiffs are entitled to the recovery of damages in an amount in excess of $1,617,524.65, with an exact amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Fraudulent Inducement)

115.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 114 of this Complaint as if set forth at length herein.

116.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver materially misrepresented that they would pay Plaintiffs there agreed to salaries, expenses, and commissions, despite the fact that had already ceased paying their current employees' salaries prior to Plaintiffs becoming employed with Defendant Downing, and that Plaintiffs were not able to earn commissions because there were no viable products to sell.

117.    At the time Plaintiffs entered into their respective employment agreements with Downing, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver had no intent to pay Plaintiffs' their salaries or expenses due thereunder.

118.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver made numerous material misrepresentations concerning the terms and facts underlying Downing and the Downing Private Placements, including, but not limited to, the products it sold, the revenue it was generating, the cash on hand, and its prior

investments, all of which Plaintiffs reasonably relied on in deciding to invest in the Downing Private Placements and become employees of Defendant Downing.

119.   Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver's representations concerning Plaintiffs' employment and the Downing Private Placements were false, and known to be false when they were made.

120.   Upon information and belief, at the time Plaintiffs entered into their employment agreements, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver never intended to pay Plaintiffs their salaries and expenses, but made the representations in order to induce Plaintiffs to invest in the Downing Private Placements and accept employment with Downing.

121.   Plaintiffs reasonably and justifiably relied upon Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver representations, and invested in the Downing Private Placements and became employees of Defendant Downing.

122.   As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of $1,617,524.65, with the exact amount to be determined at trial.

123.   Moreover, because Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver's conduct was willful and malicious, Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but in no event less than $4,000,000.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Fraud)

124.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 123 of this Complaint as if set forth at length herein.

125.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver made untrue statements of material fact, or omitted to state materials facts necessary in order to make the statements not misleading, in connection with Plaintiffs' employment with Defendant Downing and investments in the Downing Private Placements.

126.    Defendants Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati knew of the misrepresentations and/or omissions and continued to support and spread the falsity of the misrepresentations and/or omissions.

127.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati knew of or recklessly ignored the falsity of their untrue statements or omissions of material fact.

128.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati intended that Plaintiffs rely on the misrepresentations or omissions of material fact when deciding whether to become employed at Downing, and whether to make an investment in the Downing Private Placements, and continued to make misrepresentations and omissions concerning same.

129.    Plaintiffs were ignorant to the falsity of the misrepresentations and omissions of material fact, and reasonably and justifiably relied upon those misrepresentations and omissions to their detriment.

130.    By reason of the foregoing, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati committed fraud against Plaintiffs.

131.    As a direct and proximate consequence of Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati misrepresentations or omissions, Plaintiffs suffered damages in an amount to be determined at trial, but not less than $1,617,524.65.

132.    Moreover, because Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati's conduct was willful and malicious, Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but in no event less than $4,000,000.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Negligent Misrepresentation)

133.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 132 of this Complaint as if set forth at length herein.

134.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver promised to pay Plaintiffs their salaries and reimbursement of their expenses, as well as the ability to earn commissions.

135.    Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver made certain representations and/or omissions regarding the facts underlying the Downing Private Placements.

136.    In reliance upon Defendants representations, Plaintiffs became employed at Defendant Downing and invested in the Downing Private Placements.

137.    Defendants Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati continued to support and spread the representations and/or omissions while Plaintiffs were employed at Downing.

138.     As a result of Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati position as officers, owners and/or directors of Downing, they had a "special relationship" to Plaintiffs.

139.     Plaintiffs were justified in relying upon Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati's representations.

140.     As a direct and proximate consequence of Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati's representations or omissions, Plaintiffs suffered damages in an amount to be determined at trial, but not less than $1,617,524.65.

141.     Moreover, because Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati's conduct was grossly negligent and malicious, Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but in no event less than $4,000,000.

### AS AND FOR A TENTH CAUSE OF ACTION
#### (Violation of Federal Securities Laws)

142.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 141 of this Complaint as if set forth at length herein.

143.     Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver made numerous material misrepresentations and omissions to Plaintiffs concerning the Downing Private Placements in violation of federal securities laws.

144.     Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person, directly or indirectly, by the use of any means or instrumentality of

interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Securities and Exchange Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. *See* U.S.C. § 78j. The SEC, pursuant to 15 U.S.C. § 78j, promulgated S.E.C. Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5).

145. Rule 10b-5 makes it unlawful to: (1) employ any device, scheme, or artifice to defraud; (2) to make any untrue statement of a material fact or to not state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading; or (3) to engage in any act, practice, or course of business which operate or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any securities. *See* 17 C.F.R. § 240.10b-5.

146. As alleged above, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver engaged in deceptive conduct in connection with a securities transaction in violation of 15 U.S.C. § 78j, by making numerous material misrepresentations and omissions concerning the Downing Private Placements.

147. In reliance on the foregoing misrepresentations and material omissions by Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver, Plaintiffs were induced to invest $250,000 each in the Downing Private Placements.

148. As a result of their unlawful conduct, Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver willfully violated Section 10(b) of

the Exchange Act and Exchange Act 10b-5, and are liable to Plaintiffs in excess of $750,000, with an exact amount to be determined at trial.

149.    As a direct and proximate result of Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver's unlawful conduct, Plaintiffs were damaged in the amount of at least $750,000, with an exact amount to be determined at trial.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

150.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 149 of this Complaint as if set forth at length herein.

151.    As a result of the conduct described herein, Defendant Downing have been unjustly enriched at the expense of Plaintiffs.

152.    Defendant Downing received a benefit by retaining Plaintiffs wages and expenses due and owing to Plaintiffs, and received Plaintiffs investments in the Downing Private Placements.

153.    Retention of these benefits by Defendant Downing would be unjust and inequitable.

154.    Because it would be unjust and inequitable for Defendant Downing to retain such benefits, Plaintiffs are entitled to restitution of all monies unjustly and inequitably retained.

155.    By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendant Downing, in an amount to be determined at trial, but in no event less than $1,617,524.65.

***

**WHEREFORE**, Plaintiffs David Kiderman, David Hilderbrand and Ryan Detzel respectfully demand judgment as follows:

A.    On the First Cause of Action, in favor of Plaintiffs and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, in an amount to be determined at trial, but in no event less than $387,584.65, liquidated damages in an additional amount of at least $387,584.65, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

B.    On the Second Cause of Action, in favor of Plaintiff David Kiderman and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, for unpaid wages, together with interest thereon, reasonable attorneys' fees, costs and additional equal amount of liquidated damages pursuant § 198 of NYLL;

C.    On the Third Cause of Action, in favor of Plaintiff Ryan Detzel and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, for unpaid wages, together with interest thereon, reasonable attorneys' fees, costs and liquidated damages pursuant § 4113.15 of OPAA;

D.    On the Fourth Cause of Action, in favor of Plaintiff Hilderbrand and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, for unpaid wages, together with interest thereon, reasonable attorneys' fees, costs, and additional waiting time penalties pursuant § 203 of the California Labor Code;

E.      On the Fifth Cause of Action, in favor of Plaintiff Hilderbrand and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Rice, Pulver, Giffin, Robbie, Haufler, and Auda, jointly and severally, for expenses due, together with interest thereon, reasonable attorneys' fees, and costs pursuant to § 2802 of the California Labor Code;

F.      On the Sixth Cause of Action, in favor of Plaintiffs and against Defendant Downing, jointly and severally, in an amount of damages not less than $1,617,524.65, with an exact amount to be determined at trial;

G.      On the Seventh Cause of Action, in favor of Plaintiffs and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver, jointly and severally, in an amount of damages not less than $1,617,524.65, plus punitive damages not less than $4,000,000, with exact amounts to be determined at trial;

H.      On the Eighth Cause of Action, in favor of Plaintiffs and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati, jointly and severally, in an amount of damages not less than $1,617,524.65, plus punitive damages not less than $4,000,000, with exact amounts to be determined at trial;

I.      On the Ninth Cause of Action, in favor of Plaintiffs and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice, Pulver, Giffin, Giroux, Robbie, Grumbine, Haufler, Auda and Zenati, jointly and severally, in an amount of damages not less than $1,617,524.65, plus punitive damages not less than $4,000,000, with exact amounts to be determined at trial;

J.      On the Tenth Cause of Action, in favor of Plaintiffs and against Defendants Downing, Wagner, Shaut, Buckingham, Lawrence, Pila, Rice and Pulver, jointly and severally, in an amount of damages not less than $750,000, with an exact amount to be determined at trial;

K.      On the Eleventh Cause of Action, in favor of Plaintiffs and against Defendant Downing, jointly and severally, in an amount of damages not less than $1,617,524.65, with an exact amount to be determined at trial;

L.      For punitive damages of not less than $4,000,000, with an exact amount to be proven at trial;

M.      For consequential damages, liquidated damages, attorneys' fees, pre- and post-judgment interest and costs of this action;

N.      Together with such other relief in Plaintiffs' favor as this Court deems just and proper.

Dated: New York, New York
       May 31, 2016

CARMEL, MILAZZO & DICHIARA LLP

By: _____
       Ross D. Carmel, Esq.
261 Madison Avenue, 9th Floor
New York, New York 10016
(646) 838-1310

*Attorneys for Plaintiffs David Kiderman, David Hilderbrand and Ryan Detzel*