```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MR. DAVID KIDERMAN, et al.,

              Plaintiffs,            New York, N.Y.

         v.                          16 Civ. 4040 (KPF)

DOWNING INVESTMENT PARTNERS,
LP, et al.,

              Defendants.
------------------------------x
                                     September 15, 2016
                                     4:20 p.m.
Before:

                HON. KATHERINE POLK FAILLA,

                                     District Judge



                       APPEARANCES


CARMEL, MILAZZO & DiCHIARA, LLP
     Attorneys for Plaintiffs
BY:  ROSS D. CARMEL
     CHRISTOPHER P. MILAZZO

BROWN, NERI, SMITH & KHAN, LLP
     Attorneys for Defendants
BY:  ETHAN J. BROWN
```

1           (Case called)
2           THE DEPUTY CLERK:  Counsel, please identify yourselves
3   for the record.
4           MR. CARMEL:  Ross Carmel on behalf of plaintiffs.
5           THE COURT:  Thank you, sir.
6           MR. MILAZZO:  Christopher Milazzo, Carmel, Milazzo &
7   DiChiara for plaintiffs.
8           MR. BROWN:  Ethan Brown of Brown, Neri, Smith & Khan
9   on behalf of defendants.
10          THE COURT:  Thank you very much.
11          Now, we are here for both the initial pretrial
12  conference in this case and the pre-motion conference in this
13  case and as between Mr. Carmel and Mr. Milazzo, which one of
14  you is going to be doing most of the talking, or will you fight
15  it out?
16          MR. CARMEL:  Today, your Honor, it will be myself.
17          THE COURT:  Then I am happy to speak with you, sir.
18          Let me explain.  Normally, I would proceed right into
19  the motion because I have read your complaint, but this is an
20  unusual complaint because I personally have not had nor have I
21  seen the combination securities fraud FLSA complaint.  I am not
22  minimizing it, I am just saying it is interesting to me so I
23  would like to understand a little bit more.
24          I understand your position to be, sir, that the unique
25  circumstances of this job opportunity requiring, as it did an

1    investment in the company, lent itself to securities fraud
2    inasmuch as the company was not in great footing at the time it
3    made this request but, as well, FLSA, because folks never got
4    paid.
5         Am I also understanding you, I think you used the word
6    Ponzi scheme, and I want to understand what you mean by that.
7    Are you saying that the way this company stayed afloat was by
8    finding folks like your clients to just keep investing and they
9    did nothing else?
10         MR. CARMEL:  Your Honor, that's correct.
11         THE COURT:  Let's talk about that.
12         Tell me what you understand the defendant company to
13    have done.
14         MR. CARMEL:  Your Honor, my understanding is that in
15    order to keep the company financially viable, they would
16    recruit new employees promising them a salary, sales team plus
17    commissions, and then making it mandatory for them to invest in
18    one of their entities whether it be Downing Health Partners or
19    Downing Investment Partners, LP, or Surgical Safety Solutions.
20         THE COURT:  Okay.  Because as you explain it to me and
21    certainly I will hear from Mr. Brown later on, but you are
22    saying the company didn't really have any other business than
23    investment.  It is not as though, for example, it made
24    something, it produced something, it had these funds that it
25    was administering.

1            MR. CARMEL:  Your Honor, it was represented to my
2    clients that there was a product.
3            THE COURT:  Okay.
4            MR. CARMEL:  However, when they came on board they
5    discovered there was no product.
6            THE COURT:  I think I was he telescoping several
7    allegations then.  Thank you.
8            So, the funds that you were speaking of, what were
9    they supposed to -- so, we have Downing Investment Partners and
10   then Downing Partners, and then Downing Health, and then
11   Surgical Safety Solutions.  What were they all supposed to be?
12           MR. CARMEL:  Medical device companies, your Honor.
13           THE COURT:  So, your clients show up -- how long does
14   it take them to realize there is no company?
15           MR. CARMEL:  They showed up and they started, I guess
16   going on -- it was shortly after they got on board that they
17   realized that some of these representations that were made to
18   them during the recruitment regarding the products were not
19   accurate.  They started going on sales calls, I guess selling
20   the idea of a product that didn't exist.  And shortly after
21   they started, depending upon which plaintiff, all of a sudden
22   their salaries stopped coming, the checks stopped coming.
23           THE COURT:  For how long a period of time were they
24   receiving salaries?
25           MR. CARMEL:  It depends on the individual.

G9F5kidA

1            Kiderman and Mr. Detzel I believe received salaries
2    for two months while Mr. Miller and Mr. Hilderbrand received
3    salaries for one month.
4            THE COURT:  And it never went past that, no one got
5    their salary for six months or a year, at least among your
6    plaintiffs.
7            MR. CARMEL:  That's correct, your Honor.
8            THE COURT:  Sir, just to confirm, I understand that
9    you're agreeing, based on the representations of counsel, to
10   permit the dismissal of Downing Health and Surgical Safety; is
11   that correct, sir?
12           MR. CARMEL:  Correct.  We did ask for a representation
13   of some sort that 3SI, another defendant, was the successor in
14   interest to these entities.
15           THE COURT:  Okay.
16           And so assuming that's the case, you are agreeing to
17   their dismissal and I'm asking because rather than have motion
18   practice if we don't need to have motion practice, depending on
19   the representations of your adversary, I can enter an order to
20   that effect.
21           MR. CARMEL:  Yes, your Honor.
22           THE COURT:  I am then going to turn to the gentleman
23   at the back table because he is the one with the motion and you
24   are not.
25           Mr. Brown, let's talk about your motion.

1          MR. BROWN:  Yes, your Honor.

2          I think that the primary issue that we have, which I
3   think flows through both the employment claims and the
4   securities fraud claims, is that there is effectively no
5   specificity as to who did what.  If you look at, for example,
6   paragraph 37, they define, essentially, all of the defendant
7   companies as Downing and then indicate, proceed throughout the
8   rest of the complaint to identify Downing as the employer when
9   in fact each of these individuals did in fact sign on to be an
10  employee of a particular entity.  The same is really true of
11  the allegations with regard to the individual defendants.  If
12  you would look -- in terms of the fraud, if you would look at,
13  for example, paragraph 38, it identifies defendants Wagner,
14  Pila, Pulver, Giroux, and Lawrence pitched Downing as an
15  opportunity to work for a venture capital firm and sell various
16  products.  But then when you look at the individual defendants
17  or the individual plaintiffs and look at the allegations of
18  each one, for example Detzel, if you look at paragraph 39, he
19  apparently spoke to Shaut and Pulver.

20         THE COURT:  Yes, but in 40 it is Shaut and Pulver, 41;
21  and then 43 there is specificity of Pulver alone in his
22  representation, and then 44 is Shaut's representation.  So, I
23  actually thought there was -- I am not sure how much more
24  specific it could be with respect to those individual
25  defendants.

G9F5kidA

1           MR. BROWN:  As to those individuals I would agree.
2   The problem is that they then sue a whole bunch of other
3   individuals and it is not clear why those other individuals are
4   also defendants as to the fraud case brought by Detzel.
5           THE COURT:  I see.
6           MR. BROWN:  The same thing flows through all the other
7   plaintiffs.  They'll identify one or maybe two individuals who
8   made specific representations to them and allegedly induced
9   them.
10          THE COURT:  I ask you to slow down.
11          MR. BROWN:  I do tend to talk too fast.  I apologize.
12          So, they will identify and we can go through it, if it
13  is helpful, but most of them will identify one or maybe two
14  specific defendants who they had lunch with, had a variety of
15  conversations with, and in fact those representations allegedly
16  induced them to either take the job or ultimately make the
17  investment.
18          But then if you look at the overall case they're suing
19  on behalf -- they're suing a litany of companies and they're
20  suing a litany of individuals and the problem is that as to
21  most individuals and most of those companies, it is not clear
22  why each of them is a defendant.  And that's fundamentally our
23  issue in the case.
24          I don't dispute that some claims against some
25  individuals and some companies will survive a motion to dismiss

1   that we file.  The issue is do all these individuals and all
2   these entities need to be in the case as to each of these four
3   plaintiffs.  I think we can materially reduce the size and
4   scope of the case for purposes of discovery and depositions and
5   all those sorts of issues if we impose some discipline as to
6   who the right defendants are for each plaintiff.
7           THE COURT:  Let me back up a moment, sir.
8           I should have asked you this because it was something
9   that struck me from the parties' joint submission.
10          I have a sense of the plaintiff's story.  I don't mean
11  that I am not minimizing it -- I am using the term story in a
12  very broad sense.  They have told me the narrative of how it is
13  they came to be before me.  I don't actually understand the
14  defendant's position.  Is the defense's position that times
15  were -- investments were bad, times were tough.  Why were these
16  folks asked to, if they were asked, to invest in some Downing
17  related entity?  Why weren't they paid if in fact they weren't
18  paid?
19          I guess I would just like to understand the response
20  before I start understanding why it is the pleadings are
21  insufficient.
22          MR. BROWN:  I do understand and let me back up and
23  take that first.
24          THE COURT:  Thank you.
25          MR. BROWN:  So, if you just sort of back up and look

1    at the structure of these companies, Downing Partners and
2    Downing Investments, Downing Partners is basically an
3    investment banking-type operation and Downing Investment
4    Partners is the entity which is effectively the corporate
5    parent of some of these other entities.  There is a couple of
6    medical device companies that Downing Investment Partners in
7    turn invests in and those are the entities that you see, for
8    example, 3SI -- IBC -- I am blanking what IBC stands for but
9    you see those in the complaint.  Those are the operating
10   companies underneath Downing Investment Partners.
11            THE COURT:  Okay.
12            MR. BROWN:  My understanding is that those various
13   operating entities are start-up entities in the business of
14   developing medical devices and the way it has been explained to
15   me in terms of what happened here is that the company has been
16   in the process of trying to develop a variety of medical
17   devices, that process has been delayed in part by funding
18   issues, they've had trouble raising money; the process has gone
19   slower than they expected, the development of the devices has
20   been slower than they anticipated.
21            I think if you look at the -- I have seen various
22   projections that they may have thought they were going the
23   device out in beta form in 2014 or 2015.  It turns out that it
24   is still not out.  I am told that the first device is going to
25   or the first product is going to be ready in beta form within

1    the next three to four months.  That's what I have been told.
2    I can't tell you specifically whether it is going to be but
3    that's my understanding.
4             THE COURT:  So, what happened with the money that the
5    putative plaintiffs invested?  Where did that go?
6             MR. BROWN:  My understanding is it went to development
7    of these products, that they had various people on staff to do
8    research and creation of these devices.  I understand there is
9    some computer-related issues that had to be -- that they needed
10   programmers for and such and that's where the money went.
11            THE COURT:  Okay.
12            MR. BROWN:  I think most of these individuals, a lot
13   of the individuals that there were issues with, I believe, were
14   supposed to be on the sales side, the idea being that they
15   thought the product was closer to being in a position to
16   needing to a develop a market for it than it turned out to be.
17            THE COURT:  All right, because it is difficult to
18   develop a market if the product itself is not out there.
19            MR. BROWN:  On the other hand, you don't want the
20   product to be completely ready and start that day developing a
21   market for it either, you have to start educating people about
22   the product as it develops and when there were delays that
23   caused issues in terms of being able to raise the money.
24            That's my client's position.
25            THE COURT:  Sir, can you represent to me that Downing

1  Health and Surgical Safety have been consolidated into and are
2  succeeded in interest by 3SI?
3          MR. BROWN:  Yes, your Honor.  That is my understanding
4  from my clients and I have seen documents to that effect.
5          THE COURT:  With that representation I believe
6  plaintiff is -- plaintiff's are consenting to the dismissal of
7  those two entities and I will enter an order to that effect.
8          I should let you know and I am going to let the
9  plaintiffs know when they get a chance to respond, this is why
10 I am telling you, is that my reason for the pre-motion
11 conference ends up being several reasons.
12         Number one, I do want to understand with greater
13 specificity and clarity what the arguments are that you are
14 intending to raise; but secondly, if there is a way to --
15 excuse the expression -- talk you off of the ledge of some of
16 these arguments I like to use that opportunity and, conversely,
17 if there are pleading deficiencies that can be remedied by an
18 amended pleading, I would allow that because it is easier to
19 give them the opportunity now to amend than to make them offer
20 a second amended complaint in response to your motion that
21 obviates, in part or in whole, your motion.
22         So, I am trying to save us some work, all of us some
23 work.
24         MR. BROWN:  Understood.
25         THE COURT:  So, I think I understand you have a 9(b)

1  issue a PLSRA issue and they dovetail together to be the level
2  of specificity that you and your clients are seeking.
3            I don't think I understand the Martin Act claim that
4  you are making because I thought you were citing to me the
5  District Court decision in Meridian Horizon Fund, is that
6  correct?  Because I thought the case got -- I thought that got
7  reversed on appeal as a result of a New York Court of Appeals
8  decision in a case called Assured Guaranty U.K. Ltd. v.
9  JP Morgan Management Incorporated.  So, I thought that they
10 were not preempted.
11           MR. BROWN:  I apologize if we missed that, that issue.
12 I thought that our issue actually was the lack of -- it wasn't
13 so much a pure preemption issue, your Honor, it was that there
14 is, at least as we read the amended complaint, that the
15 allegation essentially was that there was negligent
16 misrepresentation wasted on effectively a contractual
17 relationship and that there wasn't a sufficient sort of special
18 relationship that generated a duty, and that is sort of a
19 negligence duty in terms of a negligence misrepresentation
20 claim I think was our argument.
21           THE COURT:  Okay.  I may not have appreciated that
22 because, again, you are giving me, because I will only let you
23 give me a three-page letter and perhaps with a 20-page letter I
24 would have gotten that easier, but let me give you some
25 thoughts and you can do with these what you think are

1   appropriate.
2          I'm not so sure about the Rule 9.  I'm not so sure
3   about the pleading deficiencies.  I understand the argument, I
4   am just not sure it is going to succeed.  My sense on the
5   Martin Act was that I didn't think that was going to succeed.
6   My sense on the labor law claims was that the employment
7   relationship had been adequately alleged.  And, my sense on the
8   unjust enrichment claim was that they could plead in the
9   alternative.
10          I am sure, sir -- look.  I know what you are doing and
11  it is understandable, you are trying to see what are and are
12  not the issues that we should be focusing on for discovery, for
13  settlement, for trial.  I don't think you would have brought a
14  partial motion to dismiss on the unjust enrichment claim alone
15  because it is not really affecting discovery.
16          So if that's all we are left with, it is not worth
17  doing.  That's not where we are, I understand that.
18          MR. BROWN:  Sure.
19          THE COURT:  I am just saying I'm not sure how
20  successful the motion to dismiss the unjust enrichment
21  allegations will be.  I'm not so sure about the Martin Act.
22          Those are on the -- I guess I will say I am more
23  pessimistic without pre-judging anything because, again, I have
24  only seen what I have seen.  I am pessimistic about your Martin
25  Act and unjust enrichment claims.  I am agnostic about your

1    9(b) and PSLRA claims and there will be, or at least I will
2    afford plaintiffs the opportunity if they want to, to take into
3    consideration the statements that you have made in their letter
4    and see if they can adjust their allegations if they want to.
5             But, to be, again, a little bit blunt, sir, you are
6    hell-bent on this motion?
7             MR. BROWN:  I would obviously have to talk to my
8    client about the import of the motion.
9             THE COURT:  I understand.
10            MR. BROWN:  I take your comments seriously and I can
11   tell you that I don't -- I don't know that we would have even
12   written the letter but for the securities-based claims.
13            THE COURT:  Okay.
14            MR. BROWN:  So, I think our primary concern really is
15   that I think if you look at the securities claims in the PSLRA,
16   that the notion that you can effectively hang a defendant on
17   the notion that somebody else that worked for them somehow made
18   misrepresentations, I don't think, is the law at least as to
19   the securities claims.  I think that would be the primary
20   thrust of the meat of the motion.  We did raise some of the
21   other issues.  Like I say, I don't think we would have pursued
22   them from a motion to dismiss perspective because I don't think
23   it would necessarily be useful and I told, your Honor,
24   forthrightly, I do believe that a portion of this claim will
25   survive.  I am not here to tell you otherwise.

1            THE COURT:  I very much appreciate your candor on that
2    front.
3            MR. BROWN:  Sure.
4            THE COURT:  I just wonder if you will tailor your
5    motion in light of that.
6            Is it your view, sir, that retaining the securities
7    fraud claims for purposes would result in incrementally more or
8    appreciably more discovery in the case?
9            MR. BROWN:  I think there is a potential for more
10   discovery because you are dealing with some entities that are
11   not the employer, they're not the party that invested the
12   money, you are dealing with some individuals who might not be
13   the principal focus of discovery if they're not defendants
14   because they're not alleged to have made direct statements.  I
15   am also sensitive to the fact that I have defendants and
16   clients who aren't very happy about the notion that they are a
17   defendant in a securities fraud action.
18           THE COURT:  Ah, yes.
19           MR. BROWN:  And are not alleged to have made false
20   statements and I am sure you can appreciate that they would
21   prefer to be out sooner rather than later if that's a viable
22   option.
23           So, I will need to speak with them further about that.
24           THE COURT:  Of course.  Before you do that, let me
25   talk to the gentlemen at the front table and see what they wish

1   to do, if they have any inclination to amend.
2           I know you have already, sir, I know because I am
3   looking at something that says first amended complaint but,
4   again, my belief -- and people can disagree with it -- is that
5   it is better to give you the chance now than to give you the
6   chance in the middle of motion practice.
7           Having reviewed Mr. Brown's submission, are there
8   changes that you wish to make?
9           MR. CARMEL:  I certainly would have to talk to my
10  clients about it.
11          THE COURT:  Of course.
12          MR. CARMEL:  But potentially -- potentially -- there
13  could be some additional level of detail that we can add to the
14  complaint.
15          THE COURT:  Okay.  Then let's talk about how we can do
16  this most efficiently.
17          Sir, by the 7th of October, which is three weeks from
18  tomorrow, could you file any amended pleading that you wish to
19  file?
20          MR. CARMEL:  Yes, your Honor.
21          THE COURT:  Okay.  That is the right answer.  Thank
22  you.
23          And then Mr. Brown, how much time would you need to
24  know what, if any motions, you would like to make or how you
25  would like to respond to that complaint?  Would you know three

1    weeks later?

2            MR. BROWN:  I think almost certainly, your Honor.  I
3    would expect the issues to be similar in nature to what we are
4    facing now.  It would just be a matter of whether we were
5    sufficiently satisfied that the amended pleading cured the
6    issues we were raising.  I don't imagine there would be new
7    issues or particularly complicated ones.

8            THE COURT:  Can I also understand, Mr. Brown, that as
9    you are waiting for the amended pleading to come in and once
10   you receive it that you will talk with your client about
11   potentially making it a partial motion to dismiss as opposed to
12   full and complete motion to dismiss in light of the
13   conversations we have had today?

14           MR. BROWN:  Yes, I will, your Honor.

15           THE COURT:  Okay.

16           So, I can expect then an amended pleading or a letter
17   that there will be no amended pleading on the 7th of October,
18   and then on the 28th October what I would like from Mr. Brown
19   is a letter indicating whether his clients wish, still, to have
20   a motion practice.

21           Mr. Carmel?

22           MR. CARMEL:  Correct, your Honor.

23           THE COURT:  Can I just understand that in your second
24   amended complaint you will delete the defendants that we have
25   been talking about today or would you prefer an order today to

1    that effect?
2             MR. CARMEL:  In our second amended complaint we can
3    delete the defendants.
4             THE COURT:  Great.  Then I won't worry about that.
5             I will know on the 28th of October what everybody's
6    thoughts are and then I can plan accordingly whether it be
7    scheduling a motion or having the parties in to deal with
8    discovery in this case.
9             Mr. Carmel, what else do you want to let me know this
10   afternoon?
11            MR. CARMEL:  At this time, nothing, your Honor.
12            THE COURT:  Okay, great.
13            Mr. Brown, anything you would like me to know?
14            MR. BROWN:  I don't think so, your Honor.
15            THE COURT:  Mr. Brown, can I ask you please, sir,
16   because we have actually had substantive discussions about your
17   motion, could you please arrange to get a transcript of this
18   proceeding in the ordinary course?
19            MR. BROWN:  I would be happy to, your Honor.
20            THE COURT:  Thank you, sir.  If you order it, I will
21   receive it electronically so you don't have to send it to me,
22   but we have had some thoughtful discussions and I want to keep
23   them in mind if and when there is motion practice.
24            I am assuming gentlemen, that per your letter to me,
25   now is not the time to be asking about settlement discussions

so I'm not going to ask you.  I will simply tell you this:  If and when there ever gets to a point where you think the assistance of someone here at the court will be useful, we have many options for you.

Let me take a moment to look -- we have Barbara Moses as the magistrate judge assigned to the case.  She can handle settlement conferences.  We have a mediation program if you are not aware of it that provides free mediators who tend to be folks at law firms you have heard of who are quite senior and quite experienced who are willing to donate their time at this stage in their careers to help get people to resolution.

So, we have that and I think both programs are excellent.  I think the magistrate judges are very well versed in settling cases and getting to the heart of issues whereas for those he folks who may need a little extra time or for those folks who have clients who may need a little extra hand-holding, there are the mediators who are available.  And, as well, I can do settlement conferences although I certainly understand that the parties would prefer not to have the presiding judge conduct them.  I leave it to you.  Just know that those things exist.

In terms of our next visit, I will decide that when I get the letter on the 28th, but you will let me know if there is anything I can do between now and then to move things along.

So, Mr. Milazzo, I will let you have the last word for

G9F5kidA

1  the front table.  Anything else today, sir?
2          MR. MILAZZO:  Nothing further, your Honor.
3          THE COURT:  I will let you take the lead next time.
4  Thank you so much.
5          Mr. Brown, anything else?
6          MR. BROWN:  Nothing further, your Honor.  Thank you.
7          THE COURT:  Thank you all for coming in.  Thank you
8  again for your patience.
9                              o0o