G9F5kidA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MR. DAVID KIDERMAN, *et al.*,

              Plaintiffs,          New York, N.Y.

        v.                       16 Civ. 4040 (KPF)

DOWNING INVESTMENT PARTNERS,
LP, et al.,

              Defendants.
------------------------------x

                              September 15, 2016
                              4:20 p.m.

Before:

           HON. KATHERINE POLK FAILLA,

                             District Judge


                    APPEARANCES


CARMEL, MILAZZO & DiCHIARA, LLP
    Attorneys for Plaintiffs
BY:  ROSS D. CARMEL
     CHRISTOPHER P. MILAZZO

BROWN, NERI, SMITH & KHAN, LLP
    Attorneys for Defendants
BY:  ETHAN J. BROWN

1                (Case called)

2                THE DEPUTY CLERK:  Counsel, please identify yourselves

3      for the record.

4                MR. CARMEL:  Ross Carmel on behalf of plaintiffs.

5                THE COURT:  Thank you, sir.

6                MR. MILAZZO:  Christopher Milazzo, Carmel, Milazzo &

7      DiChiara for plaintiffs.

8                MR. BROWN:  Ethan Brown of Brown, Neri, Smith & Khan

9      on behalf of defendants.

10                THE COURT:  Thank you very much.

11                Now, we are here for both the initial pretrial

12      conference in this case and the pre-motion conference in this

13      case and as between Mr. Carmel and Mr. Milazzo, which one of

14      you is going to be doing most of the talking, or will you fight

15      it out?

16                MR. CARMEL:  Today, your Honor, it will be myself.

17                THE COURT:  Then I am happy to speak with you, sir.

18                Let me explain.  Normally, I would proceed right into

19      the motion because I have read your complaint, but this is an

20      unusual complaint because I personally have not had nor have I

21      seen the combination securities fraud FLSA complaint.  I am not

22      minimizing it, I am just saying it is interesting to me so I

23      would like to understand a little bit more.

24                I understand your position to be, sir, that the unique

25      circumstances of this job opportunity requiring, as it did an

1    investment in the company, lent itself to securities fraud
2    inasmuch as the company was not in great footing at the time it
3    made this request but, as well, FLSA, because folks never got
4    paid.
5              Am I also understanding you, I think you used the word
6    Ponzi scheme, and I want to understand what you mean by that.
7    Are you saying that the way this company stayed afloat was by
8    finding folks like your clients to just keep investing and they
9    did nothing else?
10             MR. CARMEL:  Your Honor, that's correct.
11             THE COURT:  Let's talk about that.
12             Tell me what you understand the defendant company to
13   have done.
14             MR. CARMEL:  Your Honor, my understanding is that in
15   order to keep the company financially viable, they would
16   recruit new employees promising them a salary, sales team plus
17   commissions, and then making it mandatory for them to invest in
18   one of their entities whether it be Downing Health Partners or
19   Downing Investment Partners, LP, or Surgical Safety Solutions.
20             THE COURT:  Okay.  Because as you explain it to me and
21   certainly I will hear from Mr. Brown later on, but you are
22   saying the company didn't really have any other business than
23   investment.  It is not as though, for example, it made
24   something, it produced something, it had these funds that it
25   was administering.

|||
|---|---|
| 1 | MR. CARMEL:  Your Honor, it was represented to my |
| 2 | clients that there was a product. |
| 3 | THE COURT:  Okay. |
| 4 | MR. CARMEL:  However, when they came on board they |
| 5 | discovered there was no product. |
| 6 | THE COURT:  I think I was he telescoping several |
| 7 | allegations then.  Thank you. |
| 8 | So, the funds that you were speaking of, what were |
| 9 | they supposed to -- so, we have Downing Investment Partners and |
| 10 | then Downing Partners, and then Downing Health, and then |
| 11 | Surgical Safety Solutions.  What were they all supposed to be? |
| 12 | MR. CARMEL:  Medical device companies, your Honor. |
| 13 | THE COURT:  So, your clients show up -- how long does |
| 14 | it take them to realize there is no company? |
| 15 | MR. CARMEL:  They showed up and they started, I guess |
| 16 | going on -- it was shortly after they got on board that they |
| 17 | realized that some of these representations that were made to |
| 18 | them during the recruitment regarding the products were not |
| 19 | accurate.  They started going on sales calls, I guess selling |
| 20 | the idea of a product that didn't exist.  And shortly after |
| 21 | they started, depending upon which plaintiff, all of a sudden |
| 22 | their salaries stopped coming, the checks stopped coming. |
| 23 | THE COURT:  For how long a period of time were they |
| 24 | receiving salaries? |
| 25 | MR. CARMEL:  It depends on the individual. |

1               Kiderman and Mr. Detzel I believe received salaries
2     for two months while Mr. Miller and Mr. Hilderbrand received
3     salaries for one month.
4               THE COURT:  And it never went past that, no one got
5     their salary for six months or a year, at least among your
6     plaintiffs.
7               MR. CARMEL:  That's correct, your Honor.
8               THE COURT:  Sir, just to confirm, I understand that
9     you're agreeing, based on the representations of counsel, to
10    permit the dismissal of Downing Health and Surgical Safety; is
11    that correct, sir?
12              MR. CARMEL:  Correct.  We did ask for a representation
13    of some sort that 3SI, another defendant, was the successor in
14    interest to these entities.
15              THE COURT:  Okay.
16              And so assuming that's the case, you are agreeing to
17    their dismissal and I'm asking because rather than have motion
18    practice if we don't need to have motion practice, depending on
19    the representations of your adversary, I can enter an order to
20    that effect.
21              MR. CARMEL:  Yes, your Honor.
22              THE COURT:  I am then going to turn to the gentleman
23    at the back table because he is the one with the motion and you
24    are not.
25              Mr. Brown, let's talk about your motion.

1            MR. BROWN:  Yes, your Honor.
2            I think that the primary issue that we have, which I
3    think flows through both the employment claims and the
4    securities fraud claims, is that there is effectively no
5    specificity as to who did what.  If you look at, for example,
6    paragraph 37, they define, essentially, all of the defendant
7    companies as Downing and then indicate, proceed throughout the
8    rest of the complaint to identify Downing as the employer when
9    in fact each of these individuals did in fact sign on to be an
10   employee of a particular entity.  The same is really true of
11   the allegations with regard to the individual defendants.  If
12   you would look -- in terms of the fraud, if you would look at,
13   for example, paragraph 38, it identifies defendants Wagner,
14   Pila, Pulver, Giroux, and Lawrence pitched Downing as an
15   opportunity to work for a venture capital firm and sell various
16   products.  But then when you look at the individual defendants
17   or the individual plaintiffs and look at the allegations of
18   each one, for example Detzel, if you look at paragraph 39, he
19   apparently spoke to Shaut and Pulver.
20           THE COURT:  Yes, but in 40 it is Shaut and Pulver, 41;
21   and then 43 there is specificity of Pulver alone in his
22   representation, and then 44 is Shaut's representation.  So, I
23   actually thought there was -- I am not sure how much more
24   specific it could be with respect to those individual
25   defendants.

Case 1:16-cv-04040-KPF   Document 90   Filed 10/13/16   Page 7 of 20        7
G9F5kidA

          MR. BROWN:  As to those individuals I would agree.
The problem is that they then sue a whole bunch of other
individuals and it is not clear why those other individuals are
also defendants as to the fraud case brought by Detzel.
          THE COURT:  I see.
          MR. BROWN:  The same thing flows through all the other
plaintiffs.  They'll identify one or maybe two individuals who
made specific representations to them and allegedly induced
them.
          THE COURT:  I ask you to slow down.
          MR. BROWN:  I do tend to talk too fast.  I apologize.
          So, they will identify and we can go through it, if it
is helpful, but most of them will identify one or maybe two
specific defendants who they had lunch with, had a variety of
conversations with, and in fact those representations allegedly
induced them to either take the job or ultimately make the
investment.
          But then if you look at the overall case they're suing
on behalf -- they're suing a litany of companies and they're
suing a litany of individuals and the problem is that as to
most individuals and most of those companies, it is not clear
why each of them is a defendant.  And that's fundamentally our
issue in the case.
          I don't dispute that some claims against some
individuals and some companies will survive a motion to dismiss

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1  that we file.  The issue is do all these individuals and all
2  these entities need to be in the case as to each of these four
3  plaintiffs.  I think we can materially reduce the size and
4  scope of the case for purposes of discovery and depositions and
5  all those sorts of issues if we impose some discipline as to
6  who the right defendants are for each plaintiff.
7           THE COURT:  Let me back up a moment, sir.
8           I should have asked you this because it was something
9  that struck me from the parties' joint submission.
10          I have a sense of the plaintiff's story.  I don't mean
11 that I am not minimizing it -- I am using the term story in a
12 very broad sense.  They have told me the narrative of how it is
13 they came to be before me.  I don't actually understand the
14 defendant's position.  Is the defense's position that times
15 were -- investments were bad, times were tough.  Why were these
16 folks asked to, if they were asked, to invest in some Downing
17 related entity?  Why weren't they paid if in fact they weren't
18 paid?
19          I guess I would just like to understand the response
20 before I start understanding why it is the pleadings are
21 insufficient.
22          MR. BROWN:  I do understand and let me back up and
23 take that first.
24          THE COURT:  Thank you.
25          MR. BROWN:  So, if you just sort of back up and look

1   at the structure of these companies, Downing Partners and
2   Downing Investments, Downing Partners is basically an
3   investment banking-type operation and Downing Investment
4   Partners is the entity which is effectively the corporate
5   parent of some of these other entities.  There is a couple of
6   medical device companies that Downing Investment Partners in
7   turn invests in and those are the entities that you see, for
8   example, 3SI -- IBC -- I am blanking what IBC stands for but
9   you see those in the complaint.  Those are the operating
10  companies underneath Downing Investment Partners.
11           THE COURT:  Okay.
12           MR. BROWN:  My understanding is that those various
13  operating entities are start-up entities in the business of
14  developing medical devices and the way it has been explained to
15  me in terms of what happened here is that the company has been
16  in the process of trying to develop a variety of medical
17  devices, that process has been delayed in part by funding
18  issues, they've had trouble raising money; the process has gone
19  slower than they expected, the development of the devices has
20  been slower than they anticipated.
21           I think if you look at the -- I have seen various
22  projections that they may have thought they were going the
23  device out in beta form in 2014 or 2015.  It turns out that it
24  is still not out.  I am told that the first device is going to
25  or the first product is going to be ready in beta form within

G9F5kidA

1   the next three to four months.  That's what I have been told.
2   I can't tell you specifically whether it is going to be but
3   that's my understanding.
4            THE COURT:  So, what happened with the money that the
5   putative plaintiffs invested?  Where did that go?
6            MR. BROWN:  My understanding is it went to development
7   of these products, that they had various people on staff to do
8   research and creation of these devices.  I understand there is
9   some computer-related issues that had to be -- that they needed
10  programmers for and such and that's where the money went.
11           THE COURT:  Okay.
12           MR. BROWN:  I think most of these individuals, a lot
13  of the individuals that there were issues with, I believe, were
14  supposed to be on the sales side, the idea being that they
15  thought the product was closer to being in a position to
16  needing to a develop a market for it than it turned out to be.
17           THE COURT:  All right, because it is difficult to
18  develop a market if the product itself is not out there.
19           MR. BROWN:  On the other hand, you don't want the
20  product to be completely ready and start that day developing a
21  market for it either, you have to start educating people about
22  the product as it develops and when there were delays that
23  caused issues in terms of being able to raise the money.
24           That's my client's position.
25           THE COURT:  Sir, can you represent to me that Downing

1   Health and Surgical Safety have been consolidated into and are
2   succeeded in interest by 3SI?
3            MR. BROWN:  Yes, your Honor.  That is my understanding
4   from my clients and I have seen documents to that effect.
5            THE COURT:  With that representation I believe
6   plaintiff is -- plaintiff's are consenting to the dismissal of
7   those two entities and I will enter an order to that effect.
8            I should let you know and I am going to let the
9   plaintiffs know when they get a chance to respond, this is why
10  I am telling you, is that my reason for the pre-motion
11  conference ends up being several reasons.
12           Number one, I do want to understand with greater
13  specificity and clarity what the arguments are that you are
14  intending to raise; but secondly, if there is a way to --
15  excuse the expression -- talk you off of the ledge of some of
16  these arguments I like to use that opportunity and, conversely,
17  if there are pleading deficiencies that can be remedied by an
18  amended pleading, I would allow that because it is easier to
19  give them the opportunity now to amend than to make them offer
20  a second amended complaint in response to your motion that
21  obviates, in part or in whole, your motion.
22           So, I am trying to save us some work, all of us some
23  work.
24           MR. BROWN:  Understood.
25           THE COURT:  So, I think I understand you have a 9(b)

1    issue a PLSRA issue and they dovetail together to be the level
2    of specificity that you and your clients are seeking.
3            I don't think I understand the Martin Act claim that
4    you are making because I thought you were citing to me the
5    District Court decision in Meridian Horizon Fund, is that
6    correct?  Because I thought the case got -- I thought that got
7    reversed on appeal as a result of a New York Court of Appeals
8    decision in a case called Assured Guaranty U.K. Ltd. v.
9    JP Morgan Management Incorporated.  So, I thought that they
10   were not preempted.
11           MR. BROWN:  I apologize if we missed that, that issue.
12   I thought that our issue actually was the lack of -- it wasn't
13   so much a pure preemption issue, your Honor, it was that there
14   is, at least as we read the amended complaint, that the
15   allegation essentially was that there was negligent
16   misrepresentation wasted on effectively a contractual
17   relationship and that there wasn't a sufficient sort of special
18   relationship that generated a duty, and that is sort of a
19   negligence duty in terms of a negligence misrepresentation
20   claim I think was our argument.
21           THE COURT:  Okay.  I may not have appreciated that
22   because, again, you are giving me, because I will only let you
23   give me a three-page letter and perhaps with a 20-page letter I
24   would have gotten that easier, but let me give you some
25   thoughts and you can do with these what you think are

1   appropriate.
2             I'm not so sure about the Rule 9.  I'm not so sure
3   about the pleading deficiencies.  I understand the argument, I
4   am just not sure it is going to succeed.  My sense on the
5   Martin Act was that I didn't think that was going to succeed.
6   My sense on the labor law claims was that the employment
7   relationship had been adequately alleged.  And, my sense on the
8   unjust enrichment claim was that they could plead in the
9   alternative.
10            I am sure, sir -- look.  I know what you are doing and
11  it is understandable, you are trying to see what are and are
12  not the issues that we should be focusing on for discovery, for
13  settlement, for trial.  I don't think you would have brought a
14  partial motion to dismiss on the unjust enrichment claim alone
15  because it is not really affecting discovery.
16            So if that's all we are left with, it is not worth
17  doing.  That's not where we are, I understand that.
18            MR. BROWN:  Sure.
19            THE COURT:  I am just saying I'm not sure how
20  successful the motion to dismiss the unjust enrichment
21  allegations will be.  I'm not so sure about the Martin Act.
22            Those are on the -- I guess I will say I am more
23  pessimistic without pre-judging anything because, again, I have
24  only seen what I have seen.  I am pessimistic about your Martin
25  Act and unjust enrichment claims.  I am agnostic about your

1    9(b) and PSLRA claims and there will be, or at least I will
2    afford plaintiffs the opportunity if they want to, to take into
3    consideration the statements that you have made in their letter
4    and see if they can adjust their allegations if they want to.
5         But, to be, again, a little bit blunt, sir, you are
6    hell-bent on this motion?
7         MR. BROWN:  I would obviously have to talk to my
8    client about the import of the motion.
9         THE COURT:  I understand.
10        MR. BROWN:  I take your comments seriously and I can
11   tell you that I don't -- I don't know that we would have even
12   written the letter but for the securities-based claims.
13        THE COURT:  Okay.
14        MR. BROWN:  So, I think our primary concern really is
15   that I think if you look at the securities claims in the PSLRA,
16   that the notion that you can effectively hang a defendant on
17   the notion that somebody else that worked for them somehow made
18   misrepresentations, I don't think, is the law at least as to
19   the securities claims.  I think that would be the primary
20   thrust of the meat of the motion.  We did raise some of the
21   other issues.  Like I say, I don't think we would have pursued
22   them from a motion to dismiss perspective because I don't think
23   it would necessarily be useful and I told, your Honor,
24   forthrightly, I do believe that a portion of this claim will
25   survive.  I am not here to tell you otherwise.

1         THE COURT: I very much appreciate your candor on that
2 front.
3         MR. BROWN: Sure.
4         THE COURT: I just wonder if you will tailor your
5 motion in light of that.
6         Is it your view, sir, that retaining the securities
7 fraud claims for purposes would result in incrementally more or
8 appreciably more discovery in the case?
9         MR. BROWN: I think there is a potential for more
10 discovery because you are dealing with some entities that are
11 not the employer, they're not the party that invested the
12 money, you are dealing with some individuals who might not be
13 the principal focus of discovery if they're not defendants
14 because they're not alleged to have made direct statements. I
15 am also sensitive to the fact that I have defendants and
16 clients who aren't very happy about the notion that they are a
17 defendant in a securities fraud action.
18         THE COURT: Ah, yes.
19         MR. BROWN: And are not alleged to have made false
20 statements and I am sure you can appreciate that they would
21 prefer to be out sooner rather than later if that's a viable
22 option.
23         So, I will need to speak with them further about that.
24         THE COURT: Of course. Before you do that, let me
25 talk to the gentlemen at the front table and see what they wish

1    to do, if they have any inclination to amend.
2            I know you have already, sir, I know because I am
3    looking at something that says first amended complaint but,
4    again, my belief -- and people can disagree with it -- is that
5    it is better to give you the chance now than to give you the
6    chance in the middle of motion practice.
7            Having reviewed Mr. Brown's submission, are there
8    changes that you wish to make?
9            MR. CARMEL:  I certainly would have to talk to my
10   clients about it.
11           THE COURT:  Of course.
12           MR. CARMEL:  But potentially -- potentially -- there
13   could be some additional level of detail that we can add to the
14   complaint.
15           THE COURT:  Okay.  Then let's talk about how we can do
16   this most efficiently.
17           Sir, by the 7th of October, which is three weeks from
18   tomorrow, could you file any amended pleading that you wish to
19   file?
20           MR. CARMEL:  Yes, your Honor.
21           THE COURT:  Okay.  That is the right answer.  Thank
22   you.
23           And then Mr. Brown, how much time would you need to
24   know what, if any motions, you would like to make or how you
25   would like to respond to that complaint?  Would you know three

1    weeks later?

2            MR. BROWN:  I think almost certainly, your Honor.  I
3    would expect the issues to be similar in nature to what we are
4    facing now.  It would just be a matter of whether we were
5    sufficiently satisfied that the amended pleading cured the
6    issues we were raising.  I don't imagine there would be new
7    issues or particularly complicated ones.

8            THE COURT:  Can I also understand, Mr. Brown, that as
9    you are waiting for the amended pleading to come in and once
10   you receive it that you will talk with your client about
11   potentially making it a partial motion to dismiss as opposed to
12   full and complete motion to dismiss in light of the
13   conversations we have had today?

14           MR. BROWN:  Yes, I will, your Honor.

15           THE COURT:  Okay.

16           So, I can expect then an amended pleading or a letter
17   that there will be no amended pleading on the 7th of October,
18   and then on the 28th October what I would like from Mr. Brown
19   is a letter indicating whether his clients wish, still, to have
20   a motion practice.

21           Mr. Carmel?

22           MR. CARMEL:  Correct, your Honor.

23           THE COURT:  Can I just understand that in your second
24   amended complaint you will delete the defendants that we have
25   been talking about today or would you prefer an order today to

1    that effect?
2             MR. CARMEL:  In our second amended complaint we can
3    delete the defendants.
4             THE COURT:  Great.  Then I won't worry about that.
5             I will know on the 28th of October what everybody's
6    thoughts are and then I can plan accordingly whether it be
7    scheduling a motion or having the parties in to deal with
8    discovery in this case.
9             Mr. Carmel, what else do you want to let me know this
10   afternoon?
11            MR. CARMEL:  At this time, nothing, your Honor.
12            THE COURT:  Okay, great.
13            Mr. Brown, anything you would like me to know?
14            MR. BROWN:  I don't think so, your Honor.
15            THE COURT:  Mr. Brown, can I ask you please, sir,
16   because we have actually had substantive discussions about your
17   motion, could you please arrange to get a transcript of this
18   proceeding in the ordinary course?
19            MR. BROWN:  I would be happy to, your Honor.
20            THE COURT:  Thank you, sir.  If you order it, I will
21   receive it electronically so you don't have to send it to me,
22   but we have had some thoughtful discussions and I want to keep
23   them in mind if and when there is motion practice.
24            I am assuming gentlemen, that per your letter to me,
25   now is not the time to be asking about settlement discussions

so I'm not going to ask you. I will simply tell you this: If and when there ever gets to a point where you think the assistance of someone here at the court will be useful, we have many options for you.

Let me take a moment to look -- we have Barbara Moses as the magistrate judge assigned to the case. She can handle settlement conferences. We have a mediation program if you are not aware of it that provides free mediators who tend to be folks at law firms you have heard of who are quite senior and quite experienced who are willing to donate their time at this stage in their careers to help get people to resolution.

So, we have that and I think both programs are excellent. I think the magistrate judges are very well versed in settling cases and getting to the heart of issues whereas for those he folks who may need a little extra time or for those folks who have clients who may need a little extra hand-holding, there are the mediators who are available. And, as well, I can do settlement conferences although I certainly understand that the parties would prefer not to have the presiding judge conduct them. I leave it to you. Just know that those things exist.

In terms of our next visit, I will decide that when I get the letter on the 28th, but you will let me know if there is anything I can do between now and then to move things along.

So, Mr. Milazzo, I will let you have the last word for

G9F5kidA

1 | the front table.  Anything else today, sir?
2 |         MR. MILAZZO:  Nothing further, your Honor.
3 |         THE COURT:  I will let you take the lead next time.
4 | Thank you so much.
5 |         Mr. Brown, anything else?
6 |         MR. BROWN:  Nothing further, your Honor.  Thank you.
7 |         THE COURT:  Thank you all for coming in.  Thank you
8 | again for your patience.
9 |                              o0o