UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DAVID HILDERBRAND, DAVID KIDERMAN      :    Case No.: 16-cv-04040
RYAN DETZEL, and MARK MILLER,          :
                                       :
               Plaintiffs,             :
                                       :
   -against-                           :
                                       :
DOWNING INVESTMENT PARTNERS, LP,       :
DOWNING PARTNERS, LLC,                 :
3SI SYSTEMS, LLC, IVC HEALTHCOM, LLC,  :
DAVID W. WAGNER, MICHAEL H. SHAUT,     :
GREG AUDA, RICHARD BUCKINGHAM,         :
JEFF RICE, MARC M. LAWRENCE,           :
MICHAEL GRUMBINE, BRETT GIFFIN,        :
MARCO ZENATI, GEORGE ROBBIE,           :
and GLENN HAUFLER,                     :
                                       :
               Defendants.             :
-------------------------------------------------------------------x

**PLAINTIFFS DAVID HILDERBRAND, DAVID KIDERMAN, RYAN DETZEL, AND MARK MILLER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER OF ATTACHMENT**

CARMEL, MILAZZO & DICHIARA, LLP
261 Madison Avenue, 9th Floor
New York, New York 10016
(212) 658-0458

*Attorneys for Plaintiffs*

Plaintiffs David Hilderbrand, David Kiderman, Ryan Detzel and Mark Miller (collectively, "Plaintiffs"), by and through their counsel, Carmel, Milazzo & DiChiara, LLP, respectfully submit this reply Memorandum of Law in further support of their motion pursuant to Article 62 of the CPLR, and Fed. R. Civ. P. 64, for the issuance of an Order of Attachment (the "Motion") against the property and assets of Defendants Downing Investment Partners LP ("DIP"), Downing Partners, LLC ("DP"), 3si Systems, LLC ("3si"), IVC Healthcom, LLC ("IVC") (collectively, "Downing"), David W. Wagner ("Wagner"), Marc Lawrence ("Lawrence"), Michael Shaut ("Shaut") and Richard Buckingham ("Buckingham") (collectively, "Defendants").

## Preliminary Statement

Notorious in its omission is any attempt by Defendants to deny, argue or otherwise attack the likelihood that Plaintiffs will succeed on the merits of their claims. As such, this element of Plaintiffs' Motion should be satisfied. Also glaring is that Defendants do not deny that Defendant 3si, a Massachusetts domiciled entity, was transferred from Defendant DIP, a New York domiciled entity, to a non-party, CliniFlow Technologies, LLC ("CliniFlow"). In short, Defendants have expanded their Ponzi scheme to include a shell game. Rather, Defendant Wagner only attempts to explain away his admitted transfer of his and his family's interests in Defendant DIP to non-party, Hanover Square Capital Partners, LP ("Hanover"), which were then exchanged for interests in CliniFlow.[1] Defendant Wagner's purported explanation neither attempts to explain what Defendants DIP and DP received in consideration for this transfer nor change the fact that these assets were moved to non-parties.

---

[1] *See* Declaration of David W. Wagner ("Wagner Decl."), ¶¶ 12 and 13.

Further, Defendants' incorrectly allege that Defendant Wagner returned the $450,000 he liquidated in partnership units from Defendant DIP and placed in his family trust which resulted in a diminution in the value of Downing.[2] Notably, Defendant Wagner's Declaration makes no reference to this transaction or to him returning these funds. Rather, the Arbitration Award against Defendant DIP specifically states that "Downing does not deny that the liquidation of the Downing units resulted in an increase in the value of a trust maintained for the sole benefit of Wagner's family".[3]

With respect Defendants' concerns over the timing of Plaintiffs' Motion, Plaintiffs filed same after learning of the transferring of Defendant 3si to non-party CliniFlow and after discovering Defendant Wagner's looting of Downing.

Finally, since it was asserted by Defendants, although irrelevant, Defendants do not need to be concerned about fulfilling their obligations with respect to settlement agreements it has entered into with Plaintiffs' counsel's other clients in the event the Order of Attachment is granted. Indeed, Defendants have breached every settlement agreement they have entered into with Plaintiffs' counsel's clients ***prior*** to Defendants' submission of their Opposition to Plaintiffs' Motion. As a result, such settlement agreements are a nullity.

Defendants continue to engage in such wrongful conduct, and if left unchecked, their continued wrongful conduct will likely result in the demise of Defendants DIP, DP, 3si and IVC. As such, the Court should issue a prejudgment Order of Attachment on the assets of New York domiciled Defendants DIP, DP, as well as non-domiciliary Defendants 3si, IVC, Wagner, Lawrence, Shaut and Buckingham.

---

[2] *See* Defendants' Opposition at pg. 2, ¶ 1.
[3] *See* Exhibit C to the Affirmation of Ross D. Carmel, Esq. submitted in connection with Plaintiffs' Motion ("Carmel Aff."), at pg. 4, the last paragraph.

**Argument**

**PLAINTIFFS' HAVE ESTABLISED
GROUNDS FOR AN ORDER OF ATTACHMENT**

As set forth fully in Plaintiffs' Motion, in order to establish grounds for an Order of Attachment pursuant to CPLR § 6212, Plaintiffs must establish the following:

> that there is a cause of action, that it is probable that plaintiff will succeed on the merits, **that one or more** of the grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

N.Y. Civ. Prac. L. & R. § 6212 (McKinney 2015) (emphasis added).

Here, Defendants do not deny that a cause of action exists, that the amount demanded exceeds all known counterclaims or that Plaintiffs are likely to succeed on the merits of their claims. As Defendants do not even attempt to deny that Plaintiffs' will succeed on the merits of their claims, it should be presumed that Plaintiffs will be successful. Indeed, the higher the probability of success on Plaintiffs' claims, the more likely a court will be to grant an order of attachment. *See Davila Pena v. Morgan*, 149 F.Supp.2d 91, 94 (S.D.N.Y. 2001).

Moreover, Defendants completely overlook the fact that Plaintiffs need only show *one or more* of the grounds under CPLR § 6201 in order to be entitled to an Order of Attachment. Thus, Plaintiffs need only show that a defendant is a non-domiciliary residing out of New York State, as is the case with Defendants Wagner, Shaut, Buckingham, Lawrence, 3si and IVC, *or* Defendants are transferring, assigning, disposing, encumbering or secreting property with the intent to defraud creditors in order to obtain an Order of Attachment. Here, Plaintiffs have gone above the requirements set forth in CPLR § 6201 and have evidenced both grounds for an Order of Attachment.

### A. *Order of Attachment is Warranted Against the Non-Domiciliary Defendants*

It is undisputed that Defendants Wagner, Lawrence, Shaut, Buckingham, 3si and IVC are all non-domiciliaries residing out of New York State. In addition, Plaintiffs have established that Defendant Wagner's financial position, including owing back taxes to the State of Rhode Island,[4] and his past conduct of using Defendant DIP as his own personal piggy bank,[5] liquidating partnership units in Defendant DIP for his sole benefit, as well as paying himself $792,042.00 in compensation all while Defendant DIP reported a loss of $5,249,593.00,[6] poses a real risk of enforcing a future a judgment.

Further, Defendants Wagner, Shaut and Buckingham are the Board of Managers of Defendants 3si and IVC, and according to the Private Placement Memorandums, are responsible for the major decisions affecting Defendants 3si and IVC.[7] As such, they are responsible for orchestrating the fraud alleged in the instant matter. Moreover, Defendants Shaut and Lawrence are the individuals who made the oral misrepresentations to Plaintiffs concerning their investments and terms of employment.[8] Finally, Defendants Wagner, Lawrence and Buckingham own and control CliniFlow, the non-party to which Defendant 3si was transferred.[9] Indeed, Defendants have not denied these allegations or attempted to deny same with respect to Plaintiffs' showing of a likelihood of success on the merits.

Based on the foregoing, Defendants Wagner, Shaut, Lawrence, Buckingham, 3si and IVC's past and present conduct poses a real risk of enforcing a future judgment. As such, the

---

[4] *See* Carmel Aff. at Exhibit H.
[5] *See id.* at Ex. C, pg. 4.
[6] *Id.* at Exhibit C, pgs. 4 and 6, respectively.
[7] *See* Detzel Aff. at Ex. A, pg. 9, Kiderman Aff. at Ex. A, pg. 9, and Miller Aff. at Ex. A, pg. 8.
[8] *See* Detzel Aff. ¶¶ 4-9, and 13, Kiderman Aff. ¶¶ 4-9, and Hilderbrand Aff. ¶¶ 6-9, and 13-14.
[9] *See* Carmel Aff. at Ex. E, Ex. F and Ex. G.

Court should grant Plaintiffs Motion for an Order of Attachment against non-domiciliary Defendants Wagner, Shaut, Lawrence, Buckingham, 3si and IVC.

### B. *Defendants DP and DIP Transferred Assets with the Intent to Defraud its Creditors*

Defendants' do not they the fact that Defendant 3si, a Massachusetts domiciled entity, was transferred from Defendant DIP, a New York domiciled entity, to non-party CliniFlow. In addition, Defendants admit that Defendant 3si was Defendants DP and DIP's main asset as they refer to it as its "major investment company."[10] Further, Defendant Wagner does not deny liquidating partnership units from a New York domiciled entity, Defendant DIP, and transferring them out of state, for his and his family's sole benefit, whom are State of Rhode Island residents.

In order to establish fraudulent intent with respect to these transfers, district courts in the Second Circuit have examined whether allegedly suspicious transactions exhibit "badges of fraud" that give rise to a sufficient inference of intent. *See Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 374–75 (S.D.N.Y. 2003); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540–41 (1994). Among the badges of fraud that courts consider are (1) gross inadequacy of consideration; (2) a close relationship between transferor and transferee; (3) the transferor's insolvency as a result of the conveyance; (4) a questionable transfer not in the ordinary course of business; (5) secrecy in the transfer; and (6) retention of control of the property by the transferor after the conveyance. *New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07–CV–8008, 2008 WL 2115225, at *4 (S.D.N.Y. May 16, 2008); *United States v. Mazzeo*, 306 F.Supp.2d 294, 312 (E.D.N.Y. 2004) (also considering the "existence or cumulative effect of a pattern or series of transactions or course of conduct after the ... onset of financial difficulties,

---

[10] Wagner Decl. ¶ 8.

or pendency or threat of suits by creditors [and] the general chronology of the events and transactions under inquiry").

Here, multiple badges of fraud are present. First, there is more than a close relationship between the transferor and the transferee. In this instance, both the transferor and transferee are owned and controlled by Defendants Wagner, Buckingham and Lawrence.[11] Second, as Defendants Wagner, Buckingham and Lawrence retained control over Defendant 3si after its conveyance to non-party CliniFlow, they meet another badge of fraud.[12]

Third, there was apparently a complete lack of consideration with respect to the transfer of Defendant 3si from Defendant DIP to CliniFlow, and there is no evidence that Defendant DIP received any consideration.[13] Fourth, Defendant DIP transferred its "major investment company," Defendant 3si, effectively stripping Defendant DIP of its "major" asset.[14]

Fifth, the transfer of Defendant 3si and Defendant Wagner's liquidation of interest in Defendant DIP was not in the ordinary course of business. Indeed, Defendants provide no rationale for this transfer from one holding company (Defendant DIP) to another (CliniFlow) or any reason why the liquidation of partnership units occurred for the sole benefit of Defendant Wagner. It is clear from facts of the instant matter and Defendant Wagner's Declaration that this transfer was made to avoid potential creditors. As we know, Defendants ceased paying certain Downing employee salaries beginning in at least 2014.[15] Defendants almost immediately failed to pay Plaintiffs their salaries after commencing their employment in 2015.[16] Former Downing employees began filing lawsuits against Downing since as early as October 13, 2015.[17] And as

---

[11] *See* Wagner Decl. ¶¶ 12-13; and Carmel Aff. at Ex. E, Ex. F and Ex. G.
[12] *See* Carmel Aff. at Exhibits E and F.
[13] *See* Wagner Decl. ¶¶ 12-13.
[14] Wagner Decl. ¶ 8.
[15] *See* Carmel Aff. at Exhibit B, ¶ 10, and Exhibit C, pg. 6. at ¶ 3.
[16] *See* Detzel Aff. ¶ 11, Kiderman Aff. ¶ 11, Hilderbrand Aff. ¶ 11, and Miller Aff. 11.
[17] *See* Carmel Aff. at Exhibit C, pg. 5, last paragraph.

set forth in Defendant Wagner's Declaration, "[c]ertain other investors have demanded a return on their investments, but Downing Partners and DIP have been unable to refund the investments."[18] As such, these transfers and dispositions occurred after Defendants ceased making payroll, employees started initiating lawsuits, and after other investors demanded refund of their investments.

The foregoing clearly demonstrates the requisite badges of fraud and evidences a pattern of conduct by Defendants to transfer and dispose of assets in order avoid their creditors, including Plaintiffs.

Finally, Defendants contend that because the alleged fraudulent transfers occurred prior to Plaintiffs bringing their lawsuit "they could not have intended to defraud Plaintiffs."[19] This argument is ludicrous, and is insufficient as a matter of law. It can be inferred that Defendants, seeing the writing on the wall, began transferring assets to other entities to defraud creditors, i.e. Plaintiffs. Indeed, the overwhelming weight of authority in New York State courts and courts in this District favor the view that CPLR § 6201(3) may be satisfied where the plaintiff merely demonstrates *past* fraudulent transfers by the defendant. *See, e.g., Bank Leumi Trust Co. of New York v. Istim, Inc.*, 892 F.Supp. 478, 482 (S.D.N.Y. 1995); *New York Dist. Council of Carpenters Pension Fund*, 2008 WL 2115225, at *6; *Mineola Ford Sales Ltd. v. Rapp*, 661 N.Y.S.2d 281, 282 (N.Y. App. Div. 1997); *Bd. of Educ. of City of New York v. Treyball*, 446 N.Y.S.2d 417, 417 (N.Y. App. Div. 1982).

Accordingly, Plaintiffs have established that Defendants Wagner, DP and DIP are transferring and disposing of assets out of New York State, with the intent to defraud its

---

[18] *See* Wagner Decl. ¶ 11.
[19] Defendants' Opposition at pg. 4, ¶ 3.

creditors, including Plaintiffs. As such, the Court should grant Plaintiffs Motion for an Order of Attachment against Defendants DP, DIP and Wagner.

### C. Plaintiffs Should be Permitted to Attach any Funds, Monies, and/or Property of Defendants and Plaintiffs Will Post a Bond

In *Carpenters Pension Fund*, the court declined to resolve a dispute as to what properties the defendants actually owned and issued an order permitting plaintiffs to attach any "funds, monies, personal or real property and/or interest in property" of defendants. 2008 WL 2115225 at *6, fn 3. It left any disputes as to the scope and implementation of the attachment order to the procedures prescribed by New York law, CPLR. §§ 6219-6224. *Id.* Likewise, this Court should permit Plaintiffs to attach any funds, monies, personal or real property and/or interest in property of Defendants and leave any disputes as to the scope and implementation of the attachment order to the procedures prescribed CPLR §§ 6219-6224. With respect to the non-domiciliary Defendants 3si, IVC, Wagner, Shaut, Buckingham and Lawrence, the Court should compel them to deliver out-of-state property into New York State, to the Sheriff, so that such property may be attached. *See Koehler v. Bank of Bermuda, Ltd.*, 12 N.Y.3d 533, 539, 911 N.E.2d 825, 829, 883 N.Y.S.2d 763, 767 (2009) (finding that under Article 52 of the CPLR, a garnishee may be required to transfer judgment debtor's property it holds out of state into New York).

Plaintiffs acknowledge that they are required to give an undertaking "in a total amount fixed by the court, but not less than five hundred dollars...." CPLR § 6212(b) (McKinney 2011). Here, Plaintiffs request that an undertaking be set at $3,000.00 for attachment of up to $3,000,000 in assets, or (.1%) of the assets. The amount of the undertaking requested, when calculated as a percentage of assets, is comparable to similar attachment cases. *See, e.g., In re Amaranth Natural Gas Commodities Litigation*, 711 F.Supp.2d 301, 313 (S.D.N.Y. 2010) (undertaking of $250,000 on assets of $72.4 million [.35% of the assets]); *OSRecovery, Inc. v.*

*One Groupe Int'l, Inc.*, 305 F.Supp.2d 340, 348 (S.D.N.Y. 2004) (undertaking of $100,000 on assets of $250,000,000 [.04%]); *Hume v. 1 Prospect Park ALF, LLC*, 28 N.Y.S.3d 125, 126, 137 A.D.3d 1080, 1081 (N.Y. App. Div. 2016) (undertaking of $2,500 where plaintiff sought to recover $5 million [.05%]); *Garden City Irrigation, Inc., v. Donna Salamanca*, 801 N.Y.S.2d 234, 2005 WL 927001, *3 (N.Y. Sup. Ct. 2005) (undertaking of $500 where plaintiff sought to recover $150,000 [.33%]).

### Conclusion

Plaintiffs have demonstrated all the necessary elements for an Order of Attachment against Defendants. Accordingly, Plaintiffs should be granted an order permitting them to attach any funds, monies, personal or real property and/or interest in property of Defendants. Finally, Plaintiffs request that an undertaking be set at $3,000.00. In addition, and pursuant to the So Ordered Stipulation, Plaintiffs request the Court schedule oral argument on Plaintiffs' Motion as soon as practicable.

Dated: New York, New York
       December 8, 2016

                                        CARMEL, MILAZZO & DiCHIARA, LLP

                                        By:_____
                                            Ross D, Carmel, Esq.
                                            Christopher P. Milazzo, Esq.
                                        261 Madison Avenue, 9th Floor
                                        New York, New York 10016
                                        (212) 658-0458

                                        *Attorneys for Plaintiffs*